665 S.E.2d 273

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Joshua C. WEARS, Defendant Below, Appellant.**

No. 33529.

Supreme Court of Appeals of West Virginia.

Submitted: Feb. 27, 2008.

Decided: June 26, 2008.

Thomas H. Peyton, Esq., Peyton Law Firm, Nitro, for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Robert D. Goldberg, Esq., Assistant Attorney General, Charleston, for Appellee.

PER CURIAM.

The instant action is before this Court upon the appeal of Joshua C. Wears [hereinafter "Appellant"] from a December 28, 2006, sentencing order sentencing him to not less than one nor more than five years in the State penitentiary, with credit for two hundred sixteen (216) days time served upon a conditional guilty plea to one count of Third Degree Sexual Assault. Herein, the Appellant alleges that he is entitled to additional days of credit for time served. Additionally, he alleges that the circuit court's decision excluding evidence of prior sexual conduct by the victim under West Virginia's rape shield statute, West Virginia Code § 61–8B–11, was in error. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons expressed below, the rulings of the Circuit Court of Putnam County are affirmed.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On October 30, 2006, the Appellant pled guilty, by means of a plea agreement with the State, to sexually assaulting B.D.[1], a thirteen-year-old female, on March 28, 2005.[2] Allegations arose after B.D.'s mother found small reddish bruises, or "hickeys", on B.D.'s upper body. Upon questioning, the victim told her mother that the Appellant and his co-defendant held her down and repeatedly inserted their fingers inside her vagina while sucking on her body.

A Putnam County Grand Jury returned a true bill of indictment on July 13, 2005. On September 19, 2005, over the objections of defense counsel, the Circuit Court of Putnam County dismissed the indictment at the request of the State due to defective language in Counts 1, 2, and 3.[3] Once the indictment was dismissed, the Appellant remained incarcerated as a result of other unrelated charges. According to the record, the March 28, 2005, incident actually occurred while the Appellant was released on bond after an October 2004, arrest for sexually assaulting another thirteen-year-old, E.M.[4]

After the circuit court dismissed the first defective indictment, a Putnam County

---

1. Consistent with this Court's practice in cases involving sensitive matters, only the initials of the victim will be used. *See State v. Shrewsbury*, 213 W.Va. 327, 331 n. 1, 582 S.E.2d 774, 778 n. 1 (2003).

2. The Appellant was originally indicted for two counts of Second Degree Sexual Assault, two counts of Third Degree Sexual Assault, one count of Sexual Abuse in the First Degree, one count of Sexual Abuse in the Third Degree, and one count of Battery. The State dismissed Counts 1, 2, 4, 5, 6, and 7 as part of his plea agreement.

3. The original indictment included the term "sexual intercourse" when the facts suggested that the Appellant and his co-defendant held B.D. down and inserted their fingers into her vagina. Because the facts suggested "sexual intrusion", rather than sexual intercourse, the State requested that the original indictment be dismissed to cure the defective language in Counts 1, 2, and 3.

4. On June 15, 2005, the Appellant pled guilty to domestic battery in that matter and received a one-year sentence.

Grand Jury returned a second true bill of indictment on November 17, 2005, again charging the Appellant with two counts of Second Degree Sexual Assault, two counts of Third Degree Sexual Assault, one count of Third Degree Sexual Abuse, one count of First Degree Sexual Abuse, and one count of Battery. Appellant was arraigned on December 5, 2005, and the circuit court set bond at $37,500 upon condition that he appear for his pre-trial hearing. Appellant posted bond on December 19, 2005, and was released from custody. Thereafter, Appellant failed to appear for an April 13, 2006, pre-trial hearing. Accordingly, the circuit court issued a bench warrant and an order of bond forfeiture. It was later discovered that the Appellant had fled to North Carolina, where he was apprehended on or about May 20, 2006.[5]

Prior to trial, Appellant filed a Motion for Admission of Possible Sexual Conduct of the Alleged Victim, requesting admission of certain evidence of the victim's consensual sexual contact with another individual, Jonathon Lewis, around the same time the subject incident occurred. Appellant alleged that Lewis, also an adult, placed hickeys on the victim's body on more than one occasion, and that the victim was hiding her illegal relationship with Lewis from her parents in order to protect him. Appellant sought to introduce this evidence to prove that another perpetrator committed the sexual assault.

Subsequent to filing that motion, the Appellant received an April 4, 2006, letter from Dan Holstein, former assistant prosecuting attorney, which stated the following:

"I have one other piece of impeachment material to be disclosed. In talking with the victim on this date, she indicated that she had intercourse with another adult male, Jonathon Lewis, who is currently incarcerated pending over 200 counts of third-degree sexual assault involving two other victims, one of which is E.M., who was the victim of your client in an unrelated matter. While evidence of our victim's sexual conduct with someone else is inadmissible, it is still discoverable. Moreover, the impeachment value is this: before making the admission to me, she had twice denied the same to both Detective Johnson and Trooper Gonzalez, who investigated the Lewis matter."

Based on this information, the Appellant offered an additional reason at the evidentiary hearing held on July 27, 2006, as to why the trial court should permit him to cross-examine the victim about her sexual conduct with a third party, arguing that because she had previously lied to two investigating officers about a contemporaneous sexual relationship with the third party, this evidence was admissible to impeach her credibility. By order entered August 11, 2006, the circuit court denied Appellant's motion finding that the Appellant's proffer was insufficient for the Court to perform a balancing test as required by *State v. Calloway*, 207 W.Va. 43, 528 S.E.2d 490 (1999) and *State v. Guthrie*, 205 W.Va. 326, 518 S.E.2d 83 (1999). However, the court ruled that the Appellant could re-raise the issue upon production of additional evidence.

Appellant submitted a motion for reconsideration on September 19, 2006, attaching an affidavit quoting an unnamed witness who claimed that she had seen the victim and the third party at her home days before the incident in question and that this witness "presumed they had a sexual encounter as they had on multiple weekends in the past."[6]

**5.** At a June 8, 2006, status hearing the trial court re-set Appellant's bond at $100,000. Appellant never posted this bond and has remained incarcerated since that time.

**6.** The Affidavit of Witness Statement provides the following:

Now comes the undersigned counsel, Thomas H. Peyton, and states that an individual witness on behalf of the Defendant, Joshua C. Wears, can specifically testify as follows:

1. That prior to the incident which is the basis for this criminal action, this witness observed a relationship between Johnny Lewis and the alleged victim, B.D., which also took place at the witness' home.

2. That following sexual encounters between B.D. and Johnny Lewis, the witness would observe hickies upon the body of the alleged victim, B.D.

3. The alleged incident which gives rise to this criminal action, according to the victim, occurred on the Monday following Easter, 2005. The witness can testify that the alleged victim and Johnny Lewis were at the

The affidavit was signed only by defense counsel, and none of the unnamed witness's statements were taken under oath. At a hearing on October 26, 2006, wherein the circuit court entertained the Appellant's motion for reconsideration,[7] the Appellant again argued that evidence that another perpetrator committed the crime should be admitted. Additionally, Appellant argued that the victim had a motive to accuse the Appellant to conceal her illicit relationship with Jonathon Lewis. After hearing the arguments of both parties on these issues, the court denied the Appellant's motion for reconsideration. In a November 22, 2006, order, the court made the following findings:

1. That the defense witness may testify about seeing "Hickies" on the alleged victim's body on Sunday, March 27, 2005, PROVIDED, that the alleged victim first indicates that all the "Hickies" came from the activities of Lonzo Smith and Joshua C. Wears; and

2. The evidence regarding the alleged victim's motive for lying to law enforcement is excluded at this time.

Following the denial of the Appellant's motions, the Appellant accepted a plea agreement with the State, pleading guilty to the count of Third Degree Sexual Assault,[8] and reserving the right to appeal the adverse rulings. Thereafter, the circuit court entered a sentencing order on December 28, 2006, sentencing Appellant to not less than one nor more than five years in the State penitentiary, with credit for two hundred sixteen (216) days time served upon a conditional guilty plea to one count of Third Degree Sexual Assault.

The Appellant filed the instant petition for appeal on April 27, 2007, alleging that he is entitled to additional days of credit for time served, and that the circuit court's decision excluding evidence of prior sexual conduct by the victim under West Virginia's rape shield statute, West Virginia Code § 61–8B–11, was in error. On August 9, 2007, the circuit court, *sua sponte*, reconsidered its Order regarding the Appellant's credit for time served. The Reconsideration Order grants the Appellant a total of four hundred six (406) days credit for time served, as opposed to the two hundred sixteen (216) days credit for time served that the circuit court previously ordered. Appellant now contends that the circuit court has, for the most part, corrected the error, with the exception of sixty-six (66) days of additional credit requested.

## II.

## STANDARD OF REVIEW

Because the issues raised in the instant appeal require the application of separate

---

witness' home Easter weekend where it is presumed they had a sexual encounter as they had on multiple weekends in the past.

4. Johnny Lewis and the alleged victim slept together at the witness' home on occasions after the incident which gives rise to the current criminal action · against Joshua C. Wears.

5. The alleged victim has talked to the witness about these incidents and the witness has direct visual knowledge of a sexual relationship between Johnny Lewis and the alleged victim.

6. The Sunday just prior to the alleged incident which gives rise to this criminal action, the witness observed hickies on the body of the alleged victim after she had spent a night with Johnny Lewis.

7. The witness will state that the hickies resulted from the alleged victim's sexual encounter with Johnny Lewis.

8. It is the witness' understanding that the alleged victim's parents were not aware of this illegal (statutory rape) relationship between Johnny Lewis and the alleged victim.

9. At one point, the witness was told by the alleged victim that the alleged victim believed she was pregnant as a result of her sexual relationship with Johnny Lewis.

10. The alleged victim has accused the Defendant and a co-defendant of placing hickies on her body and other sexual contact, but not sexual intercourse. It appears the alleged victim was concealing her relationship with Johnny Lewis from law enforcement and her parents.

The above set forth evidence is taken directly from statements of the witness."

7. The record indicates that the circuit court actually entertained Appellant's motion for reconsideration on more than one occasion. Prior to the evidentiary hearing on October 26, 2006, a pre-trial hearing was conducted on October 12, 2006, wherein the court held its ruling on the motion in abeyance pending review of additional case law presented.

8. The State dismissed Count Nos. 1, 2,4, 5, 6 and 7 of the Indictment.

and distinct standards of review, we incorporate such standards into our discussion of the issues to which they pertain.

## III.

## DISCUSSION

### A.

### Credit for Time Served

With respect to the standard of review applicable where a sentence imposed by a circuit court is appealed, this Court has previously held that:

> As a general rule, the sentence imposed by a trial court is not subject to appellate review. However, in cases ... in which it is alleged that a sentencing court has imposed a penalty beyond the statutory limits or for impermissible reasons, appellate review is warranted. Syl. Pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982). Once an appropriate basis for review is established, this Court applies a three-prong standard of review to issues involving motions made pursuant to Rule 35 of the West Virginia Rules of Criminal Procedure: "We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to *de novo* review." Syl. Pt. 1, in part, *State v. Head*, 198 W.Va. 298, 480 S.E.2d 507 (1996).

*State v. McClain*, 211 W.Va. 61, 64, 561 S.E.2d 783, 786 (2002).

Appellant concedes that during the pendency of the instant appeal, a majority of his argument regarding credit for time served has been rendered moot, to the extent that the circuit court reconsidered its initial ruling concerning denial of credit for time served, granting him four hundred six (406) days credit.[9] Despite this, the Appellant, in his first assignment of error, still seeks an additional sixty-six (66) days of credit for time served, which he alleges resulted from the State's voluntary dismissal of the initial indictment as a result of the State's error in drafting the indictment. Appellant alleges that it is unfair that he is denied credit for time served that he would have received but for the State's mistake in drafting the indictment.

■ The State argues that the circuit court did not deny the Appellant a single day of pretrial credit; rather, every day spent in jail while the charges were pending was credited. Indeed, the record indicates, and the Appellant admits, that he was not jailed for the charges in the instant case between the time of the voluntary dismissal and his reindictment, but rather, he remained in custody continuing to serve time for other unrelated charges. Additionally, the State argues that the Appellant, a recidivist, should not stand to benefit from the prosecution's error in drafting the indictment. We agree with the contentions of the State.[10]

9. With respect to Action No. 05–F–126, the case resulting from the second corrected indictment, the circuit court determined that the credit for time served calculation appeared not to include 25 days in which the defendant was incarcerated from the date of his initial appearance, November 25, 2005, through to the date defendant's bond was posted, December 19, 2005. Thus, the defendant should have been given 241 days credit as of the date of sentencing, December 21, 2006. The Court noted that the calculation of 216 days for the time period of May 20, 2006, through December 21, 2006, was correct. The defendant had also requested that the court grant him 256 days additional credit for time served in Action No. 05–F–95, resulting from the first indictment that was dismissed. The defendant was incarcerated from April 4, 2005, to September 19, 2005, for a total of 165 days. After the first indictment was dismissed, the defendant continued to be incarcerated serving a one year sentence in the unrelated Action No. 05–M–14. The circuit court found that it was without jurisdiction to give defendant credit for time served between September 19, 2005 and November 24, 2005, because no charges were pending during this time period.

10. The Appellant's double jeopardy and equal protection arguments are unconvincing, as his reliance on *Martin v. Leverette*, 161 W.Va. 547, 244 S.E.2d 39 (1978) is misplaced. In Syllabus Point 1 of *Martin*, we held that "[t]he Double Jeopardy and Equal Protection Clauses of the West Virginia Constitution require that credit for time spent in jail, either pretrial or post-trial, shall be credited on an indeterminate sentence where the underlying offense is bailable." However, in the scenario where a criminal defendant is already incarcerated and serving a sentence

The Appellant would have been temporarily released after the first indictment was dismissed, but because he was serving time for a prior charge, he remained incarcerated. We agree with the State's contention that the Appellant should not be rewarded for his habitual criminal behavior. *See Echard v. Holland,* 177 W.Va. 138, 144, 351 S.E.2d 51, 57 (1986)(incarcerated defendant not entitled to credit for time served for offense committed after imposition of sentence on prior crime.) *See also Miller v. Luff,* 175 W.Va. 150, 332 S.E.2d 111 (1985). For these reasons, we affirm the ruling of the circuit court, and decline to award the Appellant any additional credit for time served.

## B.

### Exclusion of Evidence of Victim's Prior Sexual Conduct

■ In his second assignment of error, the Appellant alleges that the trial court erred when it denied his request to present evidence of the alleged victim's sexual relationship with another perpetrator and her alleged misrepresentations to law enforcement regarding that relationship which he sought to introduce as evidence of the alleged vic-

tim's possible motive to fabricate charges against him.[11] Because the Appellant failed to make an adequate proffer to the circuit court at the evidentiary hearing, we find that the circuit court correctly excluded such evidence.[12] Concerning our standard of review of the circuit court's exclusion of the evidence at issue, we note that "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl Pt. 1, *State v. Calloway,* 207 W.Va. 43, 528 S.E.2d 490 (1999). With this standard of review in mind, we now consider the issues before us.

Specifically, Appellant alleges that the proffered evidence was admissible for the following reasons: 1) the proffered evidence does not fall within the scope of the rape shield statute pursuant to *State v. Quinn,* 200 W.Va. 432, 490 S.E.2d 34 (1997); and 2) even if the proffered evidence falls within the scope of the rape shield statute, it is still admissible under two exceptions to the general rule enunciated in *State v. Guthrie,* 205 W.Va. 326, 518 S.E.2d 83, that being Rule 404(a)(3) of the *West Virginia Rules of Evi-*

for another offense, this rule is inapplicable. *State v. Williams,* 215 W.Va. 201, 208, 599 S.E.2d 624, 631 (2004)(*per curiam*).

11. The Appellant filed a Motion to Supplement the Record With Newly Discovered Evidence on August 15, 2007. However, it is well settled that "[t]he appellate review of a ruling of a circuit court is limited to the very record there made and will not take into consideration any matter which is not a part of that record." Syl. Pt. 2, *State v. Bosley,* 159 W.Va. 67, 218 S.E.2d 894 (1975). Therefore, we give the supplemented record no credence. Even if this evidence were taken into this Court's consideration, we would still find it unconvincing. The Appellant argues that the transcribed statement provides additional evidence that the victim was in a continuing relationship with Jonathon Lewis, and that the victim and Jonathon Lewis attempted to get the Appellant "in trouble." Upon our review of the transcript, we find nothing therein to support these contentions. While the transcript demonstrates that the victim knew Jonathon Lewis, it does not provide any information demonstrating the nature of their relationship. Furthermore, the fact that the victim mentioned that Jonathon Lewis "like[s to] get people in trouble" in no way provides evidence of any motive by B.D. to falsely accuse the Appellant.

12. We wish to emphasize the conditional nature of the findings made by the circuit court and the factual background upon which our decision rests. While the Appellant would have us believe that he was completely prohibited from presenting a defense in this case because the circuit court excluded certain evidence, such is not the case. In the circuit court's order following the pre-trial hearing, the court explicitly ruled that the defense witness could present impeachment evidence by testifying about seeing hickeys on the alleged victim's body on the day before the alleged sexual assault, provided that the alleged victim first indicated that all the hickeys came from the activities of Lonzo Smith and Joshua C. Wears. Additionally, the circuit court merely excluded the evidence regarding the alleged victim's motive for lying to law enforcement *at that time,* due to the insufficiency of the proffer. During the evidentiary hearing, the circuit court found that the Appellant failed to make a sufficient proffer to permit the admission of evidence of victim's relationship with Jonathon Lewis for the *specific* purposes of providing substantive exculpatory evidence that another perpetrator committed the crime, and proving that the victim had a motive to falsely accuse the Appellant.

*dence* and Appellant's Sixth Amendment rights under the Confrontation Clause of the Constitution of the United States and/or his due process right to a fair trial.

■ Appellant first cites to *State v. Quinn*, 200 W.Va. 432, 490 S.E.2d 34, and contends that although the rape shield statute, West Virginia Code § 61–8B–11(b) (1986), generally bars the introduction of evidence concerning specific instances of a victim's prior sexual conduct with persons other than the defendant in a sexual assault prosecution, if the trial court finds that there is a strong probability that the alleged victim of a sexual offense has made false statements of being the victim of sexual misconduct, evidence relating to those statements may be considered by the Court outside of the scope of the rape shield law. Syl. Pt. 4, in part, *State v. Quinn*, 200 W.Va. 432, 490 S.E.2d 34. We find the *Quinn* test inapplicable to the set of circumstances now before us.

■ In *Quinn*, the Appellant was convicted of sexual misconduct by a custodian of a five year old child. The issue to be decided was whether the rape shield law applied to bar the victim's other false statements of abuse by other perpetrators. The Appellant sought to use this evidence to prove that the victim had falsely accused others in the same fashion she falsely accused him. The Appellant argued that the rape shield law did not apply to the victim's statements because they were false, and therefore were not evidence of the child's sexual conduct. Rather, they were evidence of the child's false statement of sexual abuse when there had been none. This Court created a test in *Quinn* to determine whether such evidence fell outside of the scope of our rape shield law. Therein, we held that like many other jurisdictions which have faced this issue, we believe that "[r]equiring strong and substantial proof of the actual falsity of an alleged victim's other statements is necessary to reasonably minimize the possibility that evidence which is within the scope of our rape shield law, W. Va.Code, 61–8B–11 (1986) and West Virginia Rules of Evidence 404(a)(3)(1994), is not erroneously considered outside of its scope." *Id.* at Syl. Pt. 2. "If the trial court finds that there is a strong probability that the alleged victim of a sexual offense has made other statements which are false about being the victim of sexual misconduct, evidence relating to those statements may be considered by the court outside of the scope of our rape shield law, W. Va.Code 61–8B–11 (1986) and West Virginia Rules of Evidence 404(a)(3)(1994)." *Id.* at Syl. Pt. 4.

In the instant case, Appellant does not seek to introduce evidence that the victim lied to police officers by falsely accusing others in the same fashion she falsely accused him, as in *Quinn*. Rather, Appellant simply seeks to show that the victim initially lied to police officers in order to possibly conceal her illicit relationship with another adult, Jonathon Lewis, and thus prove not only that another perpetrator committed a sexual assault on the victim which could account for marks on her body, but also that the victim had a motive to improperly accuse the Appellant. There can be no question that the facts of instant case do not meet the circumstances required to apply the *Quinn* test. We find that the evidence at issue herein is actually inapposite to *Quinn*, falling squarely within the confines of our rape shield statute. Accordingly, because we find *Quinn* inapplicable, we continue with our analysis of Appellant's second argument to determine if Appellant's proffered evidence meets one of the exceptions to the rape shield statute.

■ West Virginia's rape shield statute provides, in pertinent part:

> In any prosecution under this article evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible: Provided, That such evidence shall be admissible solely for the purpose of impeaching credibility, if the victim first makes his or her previous conduct an issue in the trial by introducing evidence with respect thereto.

W. Va.Code § 61–8B–11(b).

We have held that:

"West Virginia Code § 61–8B–11(b)(Repl.Vol.1997) provides an exception to the general exclusion of evidence of prior sexual conduct of a victim of sexual assault. Under the statute, evidence of (1) specific instances of the victim's sexual conduct with persons other than the defendant, (2) opinion evidence of the victim's sexual conduct and (3) reputation evidence of the victim's sexual conduct can be introduced solely for the purpose of impeaching the credibility of the victim only if the victim first makes his or her previous sexual conduct an issue in the trial by introducing evidence with respect thereto."

Syl. Pt. 2, *State v. Guthrie*, 205 W.Va. 326, 518 S.E.2d 83.

Additionally, in *State v. Guthrie*, 205 W.Va. 326, 518 S.E.2d 83, we held that:

"[r]ule 404(a)(3) of the West Virginia Rules of Evidence provides an express exception to the general exclusion of evidence coming within the scope of our rape shield statute. This exception provides for the admission of prior sexual conduct of a rape victim when the trial court determines *in camera* that evidence is (1) specifically related to the act or acts for which the defendant is charged and (2) necessary to prevent manifest injustice."

*Id.* at Syl. Pt. 3.

■ A defendant seeking to introduce evidence of a victim's sexual history must offer an evidentiary proffer which affords that trial court a meaningful opportunity to balance the interests of the state, as embodied in the rape shield statute, against the interests of the defendant. "The good faith basis does not have to be admissible evidence, but it must be something that persuades the trial judge the question is proper, such as an affidavit, a reliable record, or a potential live witness." *Cleckley's Handbook on Evidence for West Virginia Lawyers* § 6–8(B)(2)(c) (4th Ed.2000). A proffer requiring the court to speculate is insufficient. *See Quinn v. Haynes*, 234 F.3d 837, 850 (4th Cir.2000)(stating that West Virginia's rejection of simple denial testimony as proof of falsity is not arbitrary or disproportionate to

the interests the rape shield law was designed to serve).

In the case *sub judice*, Appellant contends that he sought to introduce direct and circumstantial evidence that someone other than the Appellant committed the sexual acts alleged in the indictment, and that the evidence was specifically related to the act for which he was charged and its admission was necessary to prevent manifest injustice. Appellant alleges that the third party witness's testimony referenced in the affidavit would provide direct substantive exculpatory evidence that is absolutely necessary for the Appellant to prove his defense. He also alleges that the evidence he intended to introduce at trial supported his theory that the victim fabricated her claim against the Appellant to conceal her relationship with Jonathon Lewis. In reviewing the record before us, we find that the circuit court correctly denied Appellant's motion to offer such evidence.

The circuit court specifically permitted the Appellant to present impeachment evidence regarding the victim's credibility by allowing the unnamed defense witness to testify about seeing hickeys on the alleged victim's body the day before the alleged assault, provided that the alleged victim first indicated that all the hickeys came from the activities of Lonzo Smith and Joshua C. Wears. However, with respect to Appellant's intent to provide substantive exculpatory evidence that Jonathon Lewis was specifically responsible for the victim's hickeys, the Appellant did not present sufficient evidence specifically related to the acts for which he is charged, nor did he prove that the evidence was necessary to prevent manifest injustice as required by *State v. Guthrie*, 205 W.Va. 326, 518 S.E.2d 83.

First, the affidavit submitted by the Appellant consisted of nothing more than his own counsel's assertions of what an unsworn, unidentified witness might be expected to testify to at trial. The allegations contained in the affidavit were vague in nature and called for speculation. The proffer of this affidavit provided no proof of the unnamed witness's competency, opportunity to observe, or abili-

ty to perceive. Because the unidentified witness did not sign the affidavit or present testimony to the court, the Appellant offered nothing more than mere argument at the evidentiary hearing. Neither the State nor the Court were given a necessary opportunity to assess the witness's credibility or bias.

Second, even if the affidavit had been signed and sworn by a properly identified witness, the witness' expected testimony would not exclude the Appellant from the assault. The circuit court correctly concluded that even if Jonathon Lewis may have given the victim hickeys on that Sunday, such fact was not evidence specifically related to the separate sexual acts for which the Appellant was charged. The presentment of this evidence would not have excluded the Appellant, nor would it have proven that he was not involved in the assault the following day.[13]

At the hearing, the Appellant also informed the circuit court that he intended to call Detective Shawn Johnson, State Trooper Gonzalez, and former prosecutor Dan Holstein as witnesses to testify regarding the victim's prior inconsistent statements regarding her sexual relationship with Jonathon Lewis.[14] However, none of these witnesses corroborated the vague allegations of the unnamed witness contained in the affidavit offered by the Appellant, nor would any of these witnesses testify that Jonathon Lewis was specifically responsible for the victim's hickeys. Accordingly, the circuit court did not abuse its discretion in excluding such evidence.

Furthermore, concerning the issue of motive, the circuit court correctly made a conditional ruling to exclude evidence of motive *at that time*, because the proffer was simply insufficient. Appellant's counsel did not prove that the victim had kept her relationship with Jonathon Lewis a secret to hide it

from her parents. Instead, Appellant sought to bootstrap supposition and conjecture with mere possibilities and vague assertions. Although the Appellant presented a letter from Dan Holstein stating that the victim told him that she lied to the police officers about her sexual relationship with Jonathon Lewis, the letter alone simply does not establish the Appellant's theory that the victim had a motive to falsely accuse the Appellant in order to conceal her relationship with Mr. Lewis. To establish motive, the fact that the victim's parents would have disapproved of her relationship with Mr. Lewis would have, at a minimum, needed to have been proven. It was not. The record shows that defense counsel was asked what other evidence Appellant intended to present regarding motive, and counsel admitted that he did not know what the victim's parents were going to say if questions were posed in regard to that relationship.

MR. PEYTON: Yes. About [J.L.]. Now I don't know what [the victim's] parents will say if questions are posed in regard to that relationship [between the victim and J.L.] Obviously, if they said they knew it was going on and consented to it, then I don't have that argument with them any longer. I don't think they will.

THE COURT: Well, the problem is I'm going to have to exclude it a[t] this point because I'm supposed to have a hearing in camera, which was set for here today. All I have is argument. I have no witnesses to take evidence of other than I have a letter, which the Court will take record of as truth, that Mr. Holstein represented to defense counsel that the child lied, I don't have—everything else is just speculation of argument of what it is. Without something more—I do have the affidavit, but that doesn't go to the issue of Mr. Wears and the issue of J.L. and the victim's liaison as it relates to what this alleged mo-

13. Nor would it have been necessary for the Appellant to go so far as to present evidence that the victim had engaged in sexual intercourse with Jonathon Lewis in order to prove that Lewis was responsible for the victim's hickeys.

14. The law enforcement officers were expected to testify that the victim twice denied having a sexual relationship with Jonathon Lewis. However, Dan Holstein was expected to testify that she admitted to the relationship during a pre-trial interview.

tive for lying would be. That would be purely speculation.

So at this point I'm going to exclude that matter unless it can be shown to the Court otherwise.

Indeed, the victim's prior relationship, if true, had nothing to do with the Appellant's guilt or innocence unless it suggested that the victim had a motive to lie. Because Appellant did not present sufficient evidence establishing such a motive, the proffer was inadequate to prove that the evidence was specifically related to the acts for which the Appellant was charged and necessary to prevent manifest injustice.

Finally, with respect to Appellant's argument that the circuit court's exclusion of evidence of the victim's sexual conduct with Jonathon Lewis violated his due process right to a fair trial and/or his Sixth Amendment rights to confrontation, we find that the Appellant simply did not provide sufficient evidence for the court to conduct the balancing test enunciated in syllabus point 6 of *State v. Guthrie*, 205 W.Va. 326, 518 S.E.2d 83.[15]

 In *Guthrie*, we held that:

"[t]he test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is 1) whether that testimony was relevant; 2) whether the probative value of the evidence outweighed its prejudicial effect;

and 3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defense. Under this test, we will reverse a trial court's ruling only if there has been a clear abuse of discretion."[16]

In this case, the record demonstrates that three separate evidentiary hearings were held, wherein the circuit court offered the Appellant more than ample opportunity to make a sufficient proffer to the court and to articulate how the evidence could be deemed admissible in order to allow the court to conduct a balancing test weighing the Appellant's constitutional interests against the interests of the State. The circuit court correctly determined that a sufficient showing had not been made, and because of that, a balancing test was impossible at that juncture. Accordingly, the circuit court did not commit an abuse of discretion.

 A defendant's right to confront witnesses is not absolute. This interest may bow to competing and legitimate state interests. *See Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *See also Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985)(confrontation clause guarantees opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish). Trial courts "retain wide latitude ... to impose reasonable limits on

---

**15.** The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield statute violated a defendant's due process right to a fair trial is also applicable for a Confrontation Clause challenge. *State v. Guthrie*, 205 W.Va. at 339 n. 19, 518 S.E.2d at 96 n. 19.

**16.** Although not at issue in this case, as our decision here rests upon the inadequacy of Appellant's proffer, we observe that a review of West Virginia Rule of Evidence 404(a)(3) may be appropriate with respect to the issue of an accused's Sixth Amendment confrontation rights in rape shield cases. If the appropriate case presents itself in the future, we may wish to consider whether such rule as applied ensures in rape shield cases a hearing to balance the accused's Sixth Amendment rights with the State's inter-

ests in protecting sexual abuse victims in accordance with the *Rock–Lucas* principles enunciated by the U.S. Supreme Court. *See Barbe v. McBride*, 521 F.3d 443 (4th Cir.2008)(holding that the *Rock–Lucas* principle requires that a state court, in ruling on the admissibility of evidence under a rape shield law, must eschew the application of any per se rule in favor of a case-by-case assessment of whether the relevant exclusionary rule "is arbitrary or disproportionate" to the State's legitimate interests.) Because the proffer herein was inadequate, the trial court was unable to even conduct the balancing test enunciated in *State v. Guthrie*, 205 W.Va. 326, 518 S.E.2d 83, despite the trial court providing Appellant ample opportunity for a sufficient proffer.

... cross-examination based on concerns about, among other things, harassment prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

The evidence must be factually strong and substantial, both qualitatively and quantitatively, to permit cross-examination of any child victim regarding her prior sexual conduct. Without such a strong and substantial showing, permitting the Appellant to cross-examine the minor victim about her sexual conduct would defy the letter and spirit of our rape shield statute. This is not to say that evidence could not be offered to rebut an inference that the defendant's conduct caused the hickeys on the victim's body. Indeed, we believe that when an appropriate and adequate proffer is made, a defendant is entitled to introduce evidence regarding a child's prior sexual conduct to rebut such types of inferences. However, in this case, because an inadequate proffer was presented, we find no abuse of discretion below. The circuit court correctly excluded such evidence.

## IV.

### CONCLUSION

For these reasons, the Circuit Court of Putnam County did not err in calculating credit for Appellant's time served, or in denying the Appellant's motion to present evidence of the victim's prior sexual conduct. Accordingly, the circuit court's December 28, 2006, sentencing order is hereby affirmed.

**Affirmed.**