# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

April 10, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No**. **14-0472**  (McDowell County 13-F-23)

**Earl J. Click,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner and defendant below, Earl J. Click, by counsel James J. Palmer, III, appeals the March 18, 2014, order of the Circuit Court of McDowell County that sentenced him to life in prison with the recommendation of mercy and one to five years of incarceration, following his jury convictions of First Degree Murder and Felony Conspiracy, respectively. The State of West Virginia, by counsel Nic Dalton, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted on February 19, 2013, by the McDowell County Grand Jury for the offenses of First Degree Murder and Felony Conspiracy in connection with the death of Thomas Hatcher, the mayor of War, West Virginia. The victim's death occurred between the late evening hours of July 16, 2012, and the early morning hours of July 17, 2012. The victim was found lying in his bed after a coworker became concerned about his absence from work. The manner of death was determined by Dr. Nabila Haikal, the State's forensic pathologist who performed the autopsy on the victim, to be homicide caused by "asphyxia inflicted in the setting of physical assault upon his person in association with apparent external occlusion of the airway by reported plastic bag/sheet placement of his face/head."[1] It was the State's theory at trial that

---

[1] Dr. Haikal testified while photographs of the victim's body were shown to the jury. She explained that multiple injuries on the victim's face, scalp, and neck were "recent" or "fresh" and appeared to be contemporaneous with the event associated with his death. When asked about the location of certain injuries on the victim's face and whether they would be consistent with someone trying to occlude the airway, Dr. Haikal testified that

> putting it into context, it may be trying to secure – whatever the sheet or bag or whatever was used – trying to secure it, and it might have been some degree of a

1

the victim was suffocated with a plastic Belk shopping bag that was found behind the victim's head. The State argued that the motive for the murder was to prevent the victim from making a criminal complaint against petitioner's co-defendant, Rebecca Hatcher, for allegedly stealing money from the victim's bank account.[2] For his part, petitioner testified at trial that he did not kill the victim and that, during the alleged time of death, he was a few doors down from his apartment with witness Misty Laws making a sex tape, which he claimed was destroyed prior to trial.

Following a jury trial, petitioner was convicted of first degree murder and felony conspiracy. He was sentenced to life in prison with the recommendation of mercy and one to five years of incarceration, respectively. This appeal followed.

Petitioner's first assignment of error is that the circuit court erred in refusing petitioner's motion to impeach key prosecution witness Roy Harding regarding allegations by petitioner's co-defendant, Rebecca Hatcher, that he sexually assaulted her the night before the victim's death. Mr. Harding,[3] who was staying with petitioner in his apartment at the Appalachian Inn in Grundy Virginia, testified that petitioner left the apartment at approximately 11:00 pm on July 16, 2012, after he had spoken with his sister by phone and told her "you have to come up here and pick me up[,]" and that he returned between 4:00 and 4:30 a.m. on July 17, 2012, not long after the victim's murder was believed to have occurred. Mr. Harding testified that, when petitioner returned to the apartment, he had a lot of money with him and that petitioner told him that he and his sister had smothered the victim with a bag and killed him to prevent petitioner's mother and sister from going to jail.[4] Petitioner filed a pre-trial notice of intention to introduce an extrajudicial statement made by Co-Defendant Hatcher, an unavailable co-defendant, under West

---

struggle. Then it would be as the individual is moving, [the victim's] moving, and trying to keep the occlusion, the blockage by the sheet or bag or such. There may be fingernail compression of the skin. It may have scraped the skin and so on. So it suggests that it is during that assault in trying to maneuver whatever it is that was used to seal the entry of air, preventing it from going in.

[2] Rebecca Hatcher, petitioner's sister and the victim's daughter-in-law, was also indicted on first degree murder and felony conspiracy charges. She was tried separately and was acquitted of the first degree murder charge. The jury deadlocked on the felony conspiracy charge and a mistrial was declared. Petitioner represents that Hatcher subsequently entered a *Kennedy* plea to the lesser included offense of attempt to commit felony conspiracy to commit first degree murder and, on August 25, 2014, was sentenced to a prison term of one to three years.

[3] Mr. Harding is the uncle of petitioner and Co-Defendant Hatcher.

[4] Mr. Harding further testified that, as petitioner told him what had happened, petitioner was "very, very upset. . . . he was crying a lot[;]" that he observed petitioner call someone on the telephone and ask to buy $500 worth of pills; that approximately fifteen minutes later, someone pulled a car in front of the apartment; that petitioner went to the car and sat in it for a few minutes; and that petitioner returned to the room with three to four different kinds of pills.

Virginia Rule of Evidence 804(b)(5), that Mr. Harding sexually assaulted her the day before the victim's death. The circuit court took the notice under advisement until Mr. Harding testified at trial. At trial, the circuit court denied the motion to impeach Mr. Harding. The circuit court observed that, although Co-Defendant Hatcher reported the alleged assault to the police, the allegations were never pursued and neither Mr. Harding nor anyone else was arrested for the alleged crime. The circuit court determined that it would be "a stretch" to permit petitioner to cross-examine Mr. Harding regarding the alleged sexual assault, as it would be confusing and misleading to the jury, and unfairly prejudicial to the State's case under West Virginia Rule of Evidence 403.[5]

It is petitioner's contention that Mr. Harding fabricated his testimony that petitioner admitted to killing the victim in order to thwart a potential criminal investigation against him for sexually assaulting Co-Defendant Hatcher. Petitioner argues that he should have been permitted to cross-examine Mr. Harding regarding the sexual assault allegation pursuant to West Virginia Rule of Evidence 607, which provides that "[t]he credibility of a witness may be attacked and impeached by any party, including the party calling the witness." Petitioner also argues that such evidence was admissible under Rules 608[6] and 402.[7] He argues that the purpose of such cross-examination was not to elicit evidence of Mr. Harding's character for truthfulness or untruthfulness but to demonstrate his bias and challenge his credibility.[8] *See* Syl. Pt. 2, in part,

---

[5] It is noted that Mr. Harding admitted during his testimony that he was a convicted felon, having previously pled guilty to murder, for which he served 10 years of a life sentence.

[6] West Virginia Rule of Evidence 608 provides as follows:

(a) *Reputation or Opinion Evidence.* A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

(b) *Specific Instances of Conduct.* Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination of a witness other than the accused, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:

(1) the witness; or

(2) another witness whose character the witness being cross-examined has testified about.

By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.

[7] West Virginia Rule of Evidence 402 provides that relevant evidence is admissible.

[8] Although petitioner briefly asserts that the circuit court should have also analyzed the

3

*State v. Graham*, 208 W.Va. 463, 541 S.E.2d 341 (2000) (holding that "'a witness may also be cross-examined about matters affecting his credibility. The term "credibility" includes the interest and bias of the witness, inconsistent statements made by the witness and to a certain extent the witness' character.'" (internal citation omitted)). We do not find petitioner's arguments to be persuasive.

This court has held that "'[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Syllabus Point 1, *State v. Calloway,* 207 W.Va. 43, 528 S.E.2d 490 (1999)." Syl. Pt. 1, *State v. Wears*, 222 W.Va. 439, 665 S.E.2d 273 (2008). The circuit court did not abuse its discretion in refusing to allow petitioner to cross-examine Mr. Harding about Co-Defendant Hatcher's unsubstantiated accusation that he sexually assaulted her prior to the victim's death. It is undisputed that, although Co-Defendant Hatcher reported the alleged assault to the police,[9] Mr. Harding was never arrested and charges against him were never pursued. Given these facts, we cannot conclude that the circuit court abused its discretion in precluding petitioner from cross-examining Mr. Harding on Co-Defendant Hatcher's uncorroborated allegation that he assaulted her because such testimony could have confused and misled the jury and would have been unfairly prejudicial to the State's case.

Petitioner's second assignment of error is that the evidence at trial was not sufficient to sustain his convictions. In addition to Harding's testimony that petitioner admitted that he and Co-Defendant Hatcher smothered the victim with a bag, the State presented the testimony of several other witnesses to whom petitioner made incriminating statements following the victim's murder. Witness Julie Sage, petitioner's neighbor, testified that petitioner confronted her and accused her boyfriend of stealing money from petitioner's room. Specifically, she testified that petitioner stated that her boyfriend "'was up there in my room and took that money. You don't understand, that's blood money. I killed a man. That's $1,300. I killed a man for that money. That's blood money.'"[10] Ms. Sage further testified that "he said that him and his sister went over there, and that Becky [the co-defendant] started it. They put a plastic bag on him, the man's face. She started it but could not finish it . . . ." Ms. Sage then proceeded to "show [the jury] the way he showed me[.]" Similarly, witness Bo Collier, Ms. Sage's boyfriend, testified that petitioner "said he killed a man . . . . He said he grabbed him and—his sister grabbed him and started

---

issue under Rule 601 (General Rule of Competency) and 602 (Lack of Personal Knowledge), petitioner does not offer any argument in support thereof. We, therefore, to decline to consider whether the circuit court committed error in this regard. *See State v. Lilly,* 194 W.Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (cautioning that "casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal").

[9] Mr. Harding contacted police about petitioner's incriminating statements and potential involvement in the victim's death two days after the murder. Petitioner claims that Mr. Harding did so only after petitioner and his sister told Harding that they intended to go to the police to report his alleged sexual assault of Co-Defendant Hatcher.

[10] Ms. Sage indicated that the confrontation with petitioner occurred before she learned that the victim had been killed.

choking him, and said she couldn't do the job; so he started choking him until he died. That's all he told me."

Ms. Sage also testified that, at some point following the victim's murder, while petitioner rode in a truck with her and her boyfriend (witness Bo Collier), and witness Misty Laws, he asked them to help him burn a bag of clothes that he had placed in the back of the truck. She testified that they drove up a hollow and, after parking at the bottom of a driveway, petitioner "took the bag and walked up around the little curve a little bit, out of the way from where the traffic could see you . . . and then petitioner come back and got an oil jug out of [the] vehicle and set fire to that bag of clothes." Ms. Laws[11] similarly testified that she observed petitioner retrieve

> the bag that he'd thrown in the back of the truck, took it up to the top of the hill and burned it. And I walked up there . . . and at that time, I seen the clothes burning. And I already knew in the back of the truck I smelled a copper smell, which reminded me of a blood smell, but I didn't ask no questions, you know.

Petitioner made additional incriminating statements to witness Russell White, who testified that petitioner "was talking about going to West Virginia beforehand, getting some money. Then the next day, he was talking about getting some money and he said he'd killed somebody . . . ." Finally, witness Elmer Looney testified that, when he asked petitioner if he killed the victim, he replied, "I'll put it this way, the mother *****r is dead."

In addition to the testimony of these witnesses, the jury heard the testimony of Dr. Haikal, who, as previously noted, testified that the victim's multiple injuries to his face, neck, and scalp were consistent with someone trying to occlude the airway; evidence relating to Co-Defendant Hatcher's unauthorized use of the victim's bank account about which the victim became aware days before his death and the victim's contentious relationship with Co-Defendant Hatcher as described by various witnesses; that the victim's money and money clip were missing from his home following his death; that petitioner returned to his apartment with a lot of money in the early morning hours of July 17, 2012; and that the police found burned debris, including burned boots, at the location described by witnesses who accompanied petitioner when he burned the bag of clothing.

In reviewing a challenge to the sufficiency of the evidence presented at trial, this Court has held that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable

---

[11] Petitioner testified that, at the time of the victim's murder, he was with Ms. Laws making a sex tape that was destroyed prior to trial. Ms. Laws testified that although she was with petitioner until about 10:00 p.m. on July 16, 2012, she denied she was with him making a sex tape at the time of the murder.

to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

We have further held that

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

*Id.* at 663, 461 S.E.2d at 169, syl. pt. 3.

Viewing the evidence in this case in the light most favorable to the State, and crediting all inferences and credibility assessments that the jury may have drawn in a like manner, it is clear that a rational jury could have found the essential elements of the crimes were proven beyond a reasonable doubt. We, therefore, conclude that the evidence presented at trial was sufficient to sustain petitioner's convictions.[12]

---

[12] Petitioner also argues that the State failed to prove the *corpus delicti* because the testimony of Mr. Harding and petitioner's acquaintances that petitioner made incriminating statements were not adequately corroborated by other evidence. This Court has stated that

"[t]o prove the *corpus delicti* in a case of homicide two facts must be established: (1) The death of a human being and (2) a criminal agency as its cause." While the former need be proven by either direct evidence or presumptive evidence "'of the strongest kind,'" the latter "may be established by circumstantial evidence or by presumptive reasoning from the adduced facts and circumstances."

*State v. Garrett*, 195 W.Va. 630, 640, 466 S.E.2d 481, 491 (1995) (citations omitted). We further explained that

[t]he corpus delicti may not be established solely with an accused's extrajudicial confession or admission. The confession or admission must be corroborated in a material and substantial manner by independent evidence. The corroborating evidence need not of itself be conclusive but, rather, is sufficient if, when taken in connection with the confession or admission, the crime is established beyond a reasonable doubt.

6

In his remaining assignments of error, petitioner briefly asserts that (1) he should have been permitted to present evidence at trial that his co-defendant was acquitted of first degree murder in a separate trial,[13] and (2) the circuit court should have, *sua sponte*, declared a mistrial based upon witness Julie Sage's claim that petitioner "was staring and glaring at her" during her testimony. Petitioner's brief fails to offer any authority or adequate argument in support of these alleged errors. "In the absence of such supporting arguments or authority, we deem these assignments of error to have been waived." *West Va. Dep't of Health & Human Res. Employees Fed. Credit Union v. Tennant*, 215 W.Va. 387, 396, 599 S.E.2d 810, 819 (2004). *See State v. LaRock,* 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) (stating that "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority [ ] are not considered on appeal.").

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 10, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

*Id.* at 633, 466 S.E.2d at 484, syl. pt. 5. Petitioner's argument that his inculpatory extrajudicial statements to Mr. Harding and others were not materially and substantially corroborated by other, independent evidence is without merit. As previously discussed, the State presented sufficient evidence, when taken in connection with the petitioner's incriminating statements, that his crimes were established beyond a reasonable doubt.

[13] Petitioner appears to acknowledge that such evidence was not relevant; nonetheless, he contends that given that "almost all of the State's evidence regarding motive . . . was evidence that [applied] only to the co-defendant, the jury, in fairness to petitioner, should have been informed of [his] co-defendant's not guilty verdict."

7