674 S.E.2d 18

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Ronald REED, Sr., Defendant Below, Appellant.**

No. 34136.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 28, 2009.

Decided Feb. 5, 2009.

Christopher A. Scheetz, Follansbee, West Virginia, Edward L. Gillison, Jr., Weirton, for Appellant.

Scott R. Smith, Ohio County Prosecuting Attorney, John D. Little, Assistant Prosecuting Attorney, Wheeling, for Appellee.

## PER CURIAM:[1]

This is a criminal appeal by Ronald Reed (hereinafter referred to as "Mr. Reed") from an order of the Circuit Court of Ohio County sentencing him to imprisonment for not less than 385 nor more that 875 years. Mr. Reed was sentenced to prison after being convicted by a jury on charges involving sexual conduct with his daughter and two other adolescent girls. Specifically, Mr. Reed was convicted of thirty-one counts of sexual abuse by a custodian, thirty counts of sexual assault in the third degree, two counts of sexual abuse by a parent, two counts of incest, and one count of sexual assault in the first degree. Here, Mr. Reed assigns error to the trial court's ruling that permitted a video-taped deposition to be introduced at trial and to the State's failure to provide criminal and psychological records of the victims, and additionally asserts that the evidence was insufficient to support the convictions.[2] After a careful review of the briefs and record submitted on appeal, and having listened to the oral arguments of the parties, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On or about September 5, 2000, J.L.R.[3] walked into the City of Wheeling Police Department to report that she had been a victim of sexual assault by her father, Mr. Reed.[4] J.L.R. reported that the incestuous conduct began when they lived in Columbus, Ohio, when she was about four or five years

---

1. Pursuant to administrative orders entered September 11, 2008, and January 1, 2009, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. Mr. Reed's petition for appeal set out twenty-six assignments of error. This Court limited the appeal to three issues.

3. As a result of the sensitive nature of the crimes involved we will utilize the initials of all of the victims. See State v. Wears, 222 W.Va. 439, 441, 665 S.E.2d 273, 275 (2008) ("Consistent with this Court's practice in cases involving sensitive matters, only the initials of the victim will be used.").

4. The West Virginia Department of Health and Human Services was involved in the case and had made arrangements for J.L.R. to come to the police station.

old. The sexual conduct continued when they moved to Wheeling, West Virginia. The sexual conduct ended when J.L.R. was about fifteen years old.[5]

During the investigation into J.L.R.'s allegations, the police received information that Mr. Reed may have sexually assaulted two sisters, A.P. and J.P., when they were adolescents. A.P. initially would not implicate Mr. Reed as having sexually assaulted her, however, J.P. did.[6] It was reported by J.P. that in 1997, when she was about eleven years old, Mr. Reed forced her to have sex with him at a Boy Scout Camp Mr. Reed operated in Wheeling, West Virginia.[7]

On January 8, 2001, a grand jury returned an indictment against Mr. Reed. The indictment charged him with six felony sexual offenses involving his daughter, J.L.R.,[8] and two felony sexual offenses involving J.P.[9] The case against Mr. Reed languished for several years after the first indictment was returned, primarily because of constant changes in defense counsel. During the pendency of the charges against Mr. Reed, nine attorneys were appointed at various times to represent him. The eighth and ninth attorneys appointed to Mr. Reed represented him during the trial.

While the first indictment was pending against Mr. Reed, A.P. came forward with allegations against him. A.P. alleged that Mr. Reed had engaged in sexual conduct with her over thirty times, beginning when she was about fourteen years old. As a result of A.P.'s accusations, a grand jury indicted Mr. Reed again on May 10, 2004. The second indictment charged Mr. Reed with sixty felony sexual offenses involving A.P.[10] The two indictments were consolidated for trial purposes.

Mr. Reed was tried before a jury on July 6, 2005. The State called eighteen witnesses during its case-in-chief. Only two of the victims, A.P. and J.P, testified. The State relied upon the video-taped deposition testimony of the lead detective in the case, Keith Brown,[11] to establish the charges involving J.L.R.[12] At the close of the State's case-in-chief, the circuit court granted judgment of acquittal to Mr. Reed on two of the offenses involving J.L.R.[13] Mr. Reed put on a case-in-chief; however, he did not testify during the trial. He called four witnesses during his case-in-chief. Three of the witnesses were his relatives,[14] and the fourth witness was a former neighbor.

At the conclusion of all the evidence, the jury returned a verdict convicting Mr. Reed

---

5. J.L.R. was twenty years old at the time that she informed the police of Mr. Reed's incestuous conduct with her.

6. Mr. Reed was a family friend of A.P. and J.P.'s mother.

7. During the investigation, the police also learned that Mr. Reed had a long-term sexual relationship with an adolescent runaway, J.K., who moved into his home in Columbus, Ohio, in 1987. At the time that J.K. moved into the home, Mr. Reed's wife, two sons and daughter lived with him. Mr. Reed began having sexual intercourse with J.K. when she was about fourteen years old. According to the testimony of J.K., she slept with Mr. Reed from 1987 to about 1995. It appears that Mrs. Reed slept on a couch during this period. Mr. Reed impregnated J.K. on two occasions. The first child was born in 1988, and the second child was born in 1990. J.K. left Mr. Reed's home in or about 1995.

8. The felony charges involving J.L.R. included two counts of sexual abuse by a parent, two counts of incest and two counts of sexual assault in the second degree.

9. The felony charges involving J.P. included one count of sexual abuse by a custodian and one count of sexual assault in the first degree.

10. The felony charges included thirty counts of sexual abuse by a custodian and thirty counts of sexual assault in the third degree. The second indictment also charged Mr. Reed with five misdemeanor counts of contributing to the delinquency of A.P. However, the misdemeanor counts were dismissed prior to trial.

11. Mr. Brown was deposed for trial purposes because he was scheduled to be deployed to Iraq.

12. J.L.R. was listed as a witness by Mr. Reed. However, it appears that J.L.R. had moved to another state at the time of the trial.

13. Judgment of acquittal was granted on two counts in the first indictment that charged Mr. Reed with sexual assault in the second degree.

14. Mr. Reed's brother and two of his cousins testified on his behalf.

of thirty-one counts of sexual abuse by a custodian, thirty counts of sexual assault in the third degree, two counts of sexual abuse by a parent, two counts of incest, and one count of sexual assault in the first degree. The circuit court thereafter sentenced Mr. Reed to serve consecutive sentences that would result in his imprisonment for a term of not less than 385 nor more that 875 years. Mr. Reed filed post-trial motions for a new trial and judgment of acquittal. Both were denied. Thereafter, Mr. Reed filed this appeal.

## II.

### STANDARD OF REVIEW

 In this case we are called upon to review the circuit court's order which denied Mr. Reed a new trial. This Court has previously held that

> "[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence."

*State v. Vance,* 207 W.Va. 640, 643, 535 S.E.2d 484, 487 (2000) (quoting Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976)). We elaborated upon the standard of review in Syllabus point 3 of *Vance:*

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

207 W.Va. 640, 535 S.E.2d 484. Utilizing these standards of review as guidance, we will address the issues raised by Mr. Reed.

## III.

### DISCUSSION

#### A. Admission of Video–Taped Deposition

 Mr. Reed contends that the trial court committed error in admitting the video-taped deposition of Mr. Brown. It has been recognized that a trial court's "decision to actually admit [a] deposition as evidence is reviewed for an abuse of discretion." *United States v. Martinez,* 198 Fed.Appx. 704, 711 (10th Cir.2006). *See United States v. Campbell,* 845 F.2d 1374, 1378 (6th Cir.1988) ("The determination of admissibility of deposition testimony based on the unavailability of the witness is a matter left to the discretion of the trial judge."). This Court has previously held that

> Rule 15 of the West Virginia Rules of Criminal Procedure permits a deposition to be compelled in a criminal case only under very limited conditions, i.e., where, due to exceptional circumstances, the deposition is necessary, in the interest of justice, to preserve the deponent's testimony for use at trial.

Syl. pt. 1, *State ex rel. Spaulding v. Watt,* 186 W.Va. 125, 411 S.E.2d 450 (1991).

In the instant case, Mr. Reed's trial was scheduled to occur in December of 2004. However, Mr. Reed filed a motion to continue the trial. In support of that motion, Mr. Reed indicated that Mr. Brown was "scheduled to be deployed for service in the Military." Insofar as a continuation of the trial date might have precluded Mr. Brown from being available to testify, Mr. Reed argued that "there is no reason why the investigating officer cannot provide a trial deposition." At the hearing on the motion for a continuance, the parties informed the trial court that Mr. Brown's deposition would be taken for trial purposes, if the court granted the continuance. In an order dated December 11, 2004, the trial court granted the continuance. The trial court approved the parties' agreement to have Mr. Brown deposed.[15]

---

**15.** Rule 15(g) of the West Virginia Rules of Criminal Procedure states that nothing prohibits "the taking of a deposition, orally or upon written questions, or the use of a deposition by agreement of the parties with the consent of the court."

Here, Mr. Reed does not contend that Mr. Brown's deposition should not have been taken. Instead, Mr. Reed argues that Mr. Brown's deposition should not have been introduced into evidence because the attorney who represented Mr. Reed during the deposition had a conflict of interest and because the deposition contained inadmissible hearsay. We will address these arguments separately.

**■ 1. Conflict of interest by counsel.** When Mr. Brown's deposition was taken, Mr. Reed was represented by Kevin Neiswonger. Mr. Reed argues that Mr. Neiswonger should not have represented him at the deposition because of a conflict of interest. This Court has recognized that "[w]here representation is affected by an actual conflict of interest, the defendant cannot be said to have received effective assistance of counsel as required by the Sixth Amendment." *State ex rel. Blake v. Hatcher,* 218 W.Va. 407, 413–14, 624 S.E.2d 844, 850–51 (2005). *Accord State ex rel. Humphries v. McBride,* 220 W.Va. 362, 369, 647 S.E.2d 798, 805 (2007). We have also observed that "[a]n indigent criminal defendant may demand different counsel for good cause, such as the existence of a conflict of interest or, if the potential conflict is disclosed in a timely fashion, he may elect to waive his rights and keep the court appointed counsel." *State v. Reedy,* 177 W.Va. 406, 411, 352 S.E.2d 158, 163 (1986).

Shortly after Mr. Brown's deposition was taken, Mr. Neiswonger withdrew from the case because of a possible conflict of interest. The trial court appointed new counsel. Subsequent to the appointment of new counsel, Mr. Reed filed a motion to suppress the deposition testimony of Mr. Brown. In that motion, and in this appeal, Mr. Reed argued that, at the time of the deposition, he was contemplating legal action against an attorney in Mr. Neiswonger's office.[16] Mr. Reed contended that, as a result of this situation, Mr. Neiswonger should not have represented him at the deposition. A hearing was held on the motion. During the hearing, the following exchange occurred between the trial court and one of Mr. Reed's new attorneys:

THE COURT: Well, as I recall, when this issue developed, at the time of Mr. Brown's deposition, it had never been determined that there was a conflict. This was brought to the Court's attention. The Court had requested additional information to review. It wasn't, "Yeah, you have a conflict, but go do the deposition anyway."

MR. GILLISON: Yes, sir. I understand.

THE COURT: I wasn't able to make any determination based on what had been presented. I had requested additional information regarding this abuse and neglect proceeding and his office representation, and I believe it was presented at that time, out of an abundance of caution, mainly because there had never been any sort of filing made asserting malpractice or ethical violations by his office. And, to my knowledge, as of this day, there still hasn't been.

MR. GILLISON: Yes, sir.

THE COURT: So I don't even know that we can say today with finality that he has a conflict. But, nonetheless, out of an abundance of caution, after receiving the information and reviewing it, I went ahead and appointed different counsel.

And aside from that, as I recall, Mr. Reed even saying, prior to start of Mr. Brown's deposition, that it was fine to go ahead with the deposition today.

MR. GILLISON: Okay. I was unaware of that, Your Honor.

THE COURT: I'm almost certain he said that to me.

MR. GILLISON: Yes, sir, Your Honor. Mr. Reed just related to me that he did—he does acknowledge that he did tell you to go forward with the deposition, but our position is that he made that belief, that he made that admission to you, to go ahead based upon the fact that he believed that Mr. Neiswonger would ask the questions that he thought that he would ask....

**16.** An attorney in Mr. Neiswonger's office had represented Mr. Reed in an abuse and neglect proceeding.

The trial court ultimately denied Mr. Reed's motion to suppress the deposition testimony of Mr. Brown.

Mr. Reed contends that the basis of Mr. Neiswonger's conflict of interest was that Mr. Neiswonger did not ask certain questions purportedly requested by Mr. Reed,[17] and that Mr. Reed may have been contemplating legal action against an attorney in Mr. Neiswonger's office. Like the circuit court, we do not believe that these two assertions provide sufficient proof to establish a conflict of interest. Further, even if Mr. Reed had provided sufficient evidence to show that a conflict of interest existed, the record in this case shows that Mr. Reed waived the conflict of interest issue. As shown above, the trial court informed new counsel, who was not present during the deposition, that Mr. Reed agreed to have Mr. Neiswonger conduct the deposition even though Mr. Reed may have been contemplating legal action against an attorney in Mr. Neiswonger's office. During the suppression hearing, Mr. Reed indicated that he did in fact agree to have Mr. Neiswonger conduct the deposition. *See State ex rel. Michael A.P. v. Miller,* 207 W.Va. 114, 121, 529 S.E.2d 354, 361 (2000) (" 'Once satisfied that [a] defendant has made a voluntary and knowing waiver of a conflict of interest, the trial court may permit counsel's continued representation[.]" ' (quoting *State v. Cobbs,* 221 Wis.2d 101, 105–06, 584 N.W.2d 709, 711 (1998))). Mr. Reed could not agree to allow Mr. Neiswonger to represent him, notwithstanding a possible conflict of interest, and then complain about that representation because of the same possible conflict of interest. This tactic constitutes "invited" error.

*See State v. Johnson,* 197 W.Va. 575, 582, 476 S.E.2d 522, 529 (1996) ("A judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." (internal quotations and citations omitted)); *State v. Crabtree,* 198 W.Va. 620, 627, 482 S.E.2d 605, 612 (1996) ("Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences."). Consequently, we find that the alleged conflict of interest claim was waived by Mr. Reed.

■ 2. **Admission of hearsay.** Mr. Reed next argues that Mr. Brown's deposition should not have been admitted because it contained hearsay statements regarding the allegations made by J.L.R.[18] Rule 802 of the West Virginia Rules of Evidence precludes introduction of hearsay except as provided by the Rules of Evidence.[19] *See State v. Maynard,* 183 W.Va. 1, 4, 393 S.E.2d 221, 224 (1990) ("Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible[.]").

■ Pursuant to Rule 15(f) of the West Virginia Rules of Criminal Procedure, "[o]bjections to deposition testimony or evidence or parts thereof and the grounds for the objection shall be stated at the time of the taking of the deposition." In the instant case, Mr. Reed was present with counsel during the deposition of Mr. Brown. Further, defense counsel cross-examined Mr. Brown.[20] However, defense counsel failed to raise any objections to the testimony of Mr. Brown during direct examination.[21] This

17. It will be noted that the record contains a notice by a prior counsel for Mr. Reed, which notice lists thirty actions that Mr. Reed requested be done, but which counsel refused to do.

18. Mr. Brown's testimony contained statements that involved all of the victims, but Mr. Reed only complains about statements that involved J.L.R.

19. Rule 801(c) of the West Virginia Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

20. This Court has previously observed that Rule 804(b)(1) of the West Virginia Rules of Evidence

"specifically provides that a deposition is not excluded from evidence by the hearsay rule where there has been the right to develop the testimony by direct, cross, or redirect examination." *State ex rel. Spaulding v. Watt,* 186 W.Va. 125, 126 n. 1, 411 S.E.2d 450, 451 n. 1 (1991). Of course, if a party properly objects to specific testimony or evidence proffered during a deposition, a trial court may exclude such testimony or evidence.

21. Prior to the start of trial, the circuit court indicated that it was prepared to rule upon any objections that were made during the deposition. The parties agreed that no objections were made during the deposition. Consequently, the trial

Court has firmly established that, " '[w]here objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal.' " *State v. Simons,* 201 W.Va. 235, 239, 496 S.E.2d 185, 189 (1997) (quoting Syl. pt. 1, *State Road Comm'n v. Ferguson,* 148 W.Va. 742, 137 S.E.2d 206 (1964)). That is, " '[t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect.' " Syl. pt. 10, *State v. Shrewsbury,* 213 W.Va. 327, 582 S.E.2d 774 (2003) (quoting Syl. pt. 2, *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 470 S.E.2d 162 (1996)). Insofar as no objections were made during the taking of the deposition, as required by Rule 15(f) of the West Virginia Rules of Criminal Procedure, any error in admitting the statements on alleged hearsay grounds will not be considered in this appeal.[22]

### B. Disclosure of Criminal and Psychological Records

 The next issue raised by Mr. Reed is that he is entitled to a new trial because the State failed to disclose the psychological records of A.P. and J.P., as well as the criminal records of all three victims and a witness, J.K. In the single Syllabus point of *State v. Cowan,* 156 W.Va. 827, 197 S.E.2d 641 (1973), this Court held, in relevant part, that:

> After a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession . . . failure of the prosecution to disclose [such evidence] is grounds for a new trial when such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the [evidence]

available hampers the preparation and presentation of defendant's case.

*See* Syl. pt. 2, *State ex rel. Rusen v. Hill,* 193 W.Va. 133, 454 S.E.2d 427 (1994) ("The traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case.").

In addressing the issue of disclosure of psychological records, this Court has held that "Rule 16(a)(1)(D) of the West Virginia Rules of Criminal Procedure allows discovery of all results or reports of physical or mental examinations which are material to the defense or are to be used as evidence in the prosecution's case-in-chief." Syl. pt. 1, *State v. Roy,* 194 W.Va. 276, 460 S.E.2d 277 (1995). The decision in *Roy* noted that psychological records are clothed with confidentiality by statute. As a consequence of this statutory confidentiality, *Roy* held:

> [I]f the defendant can establish by credible evidence that the protected communications are likely to be useful to his defense, the judge should review the communications in camera. In reviewing the protected communications to determine whether they should be released to the defendant, the trial judge should look for evidence such as a witness's motive to lie against the defendant and for such information that might indicate misidentification or the inability to identify or describe the assailant.

*Roy,* 194 W.Va. at 285, 460 S.E.2d at 286.

The record discloses that Mr. Reed filed a motion on February 6, 2001, asking the trial court to require the State to produce the

---

court allowed the deposition to be introduced at trial in its entirety.

**22.** The record indicates that during a pre-indictment preliminary hearing related to charges contained in the first indictment, Mr. Brown and J.L.R. testified. During that hearing, counsel for Mr. Reed objected to Mr. Brown's testimony as being inadmissible hearsay. The magistrate presiding over the preliminary hearing overruled the objections on the ground that Mr. Brown's testi-

mony was offered not "for the truth of the matter asserted but merely to establish a basis for what Detective Brown did as a result of his investigation." Insofar as an objection was made to Mr. Brown's testimony during the preliminary hearing, we are unable to determine why no objections were made during the deposition—or even during the trial when the deposition was played to the jury.

psychological records of J.L.R. and J.P.[23] The State responded to the motion by arguing that it did not have, nor was it aware of the existence of, any psychological records regarding J.L.R. and J.P. Mr. Reed contends that after a November 1, 2002, hearing, the trial court ordered the State to disclose the psychological records of A.P. and J.P.[24] The State argues that the record does not support Mr. Reed's contention.[25] We agree.

The order from the hearing held on November 1, 2002, was entered on December 18, 2002, and imposes the following two requirements upon the State:

> ORDERED that the State shall provide the Defendant with a report concerning the findings and conclusions of [Dr.] Dennis Macieko as soon as possible. It is also
>
> ORDERED that the State shall provide the Defendant with any records relied upon by an expert with regard to A.P.

The State asserts that it complied with the trial court's order and provided Mr. Reed with a copy of Dr. Macieko's report.[26] The record does not show that the State produced any documents relied upon by an expert with regard to A.P. However, during the trial, the State did not call an expert witness regarding any evidence that pertained to A.P. More importantly, other than references to the order of December 18, 2002, Mr. Reed has failed to cite to anything in the record, nor have we been able to locate anything in the record which shows that the trial judge ordered disclosure of psychological records concerning A.P., J.P., or J.L.R.[27] Conse-

quently, we find no merit to Mr. Reed's contention that the State failed to comply with an order of the trial court to produce psychological records.

■ We also summarily reject the issue raised by Mr. Reed regarding the failure of the State to produce alleged criminal records of A.P., J.P., J.L.R. and a witness, J.K. The following is all that Mr. Reed argues in his brief regarding this issue:

> Furthermore, the criminal records of A.P., J.P., J.L.R. and [J.K.] were not disclosed to the Appellant.

This Court has made it clear that while "we liberally construe briefs in determining issues presented for review, issues which are ... mentioned only in passing but are not supported with pertinent authority ... are not considered[.]" *State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) (citation omitted). We will not consider Mr. Reed's one sentence argument regarding the State's failure to disclose alleged criminal records.[28]

### C. Sufficiency of Evidence

■ The final assignment of error raised by Mr. Reed is that the evidence was insufficient to support the convictions. We have previously addressed the appellate review posture of an insufficiency of evidence claim as follows:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An

**23.** Mr. Reed also filed a supplemental motion on February 7, 2001, seeking psychological records of A.P.

**24.** At the time of the hearing, no charges were actually brought against Mr. Reed regarding sexual conduct with A.P.

**25.** The trial judge at the hearing was not the judge who ultimately presided over the trial. Additionally, during the hearing, Mr. Reed was not represented by his current counsel.

**26.** Dr. Macieko was not called upon to testify during the trial. Further, the record indicates that Dr. Macieko was asked to evaluate J.L.R., and not A.P. or J.P.

**27.** Mr. Reed argues in his reply brief that a hearing was held on February 26, 2001, and that, during that hearing, certain educational and

medical records were submitted to the court. Mr. Reed contends that the trial court indicated that it would review the documents for relevancy. Mr. Reed supports these allegations by referencing a motion he filed on March 22, 2001, which is in the record on appeal. However, the record submitted in this case does not have a transcript of the purported hearing on February 26. Additionally, Mr. Reed has not indicated, nor have we found, an order that was entered regarding the documents allegedly tendered to the trial court at the February 26 hearing.

**28.** It should be noted that the record contains a July 5, 2005, supplemental discovery response by the State, which provides criminal prosecution information regarding J.P.

appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. pt. 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

1. **J.L.R. convictions.** As previously indicated, with respect to the charges involving J.L.R., the jury convicted Mr. Reed on two counts of sexual abuse by a parent and two counts of incest. Mr. Reed contends that the evidence was insufficient to support the convictions. The evidence relied upon by the State to support the convictions came from the testimony of Mr. Brown.[29] During the trial, Mr. Brown testified that J.L.R. informed him that Mr. Reed began sexually abusing her at about the age of four or five, when the family lived in Ohio. According to Mr. Brown, the sexual abuse began with inappropriate fondling and escalated to sexual intercourse. Mr. Brown testified that sexual intercourse took place two or three times after the family had moved to West Virginia.

▇▇▇ Mr. Reed contends that this Court should not consider the testimony of Mr. Brown because J.L.R. did not testify.

Therefore, he was deprived of an opportunity to confront her regarding the statements she made to Mr. Brown. In support of his argument, Mr. Reed relies upon the decision of the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).[30]

In *Crawford*, the defendant was convicted, by a Washington jury, of assault. Part of the evidence used to support the conviction was a tape-recorded incriminating statement given to the police by the defendant's wife. The defendant's wife did not testify at the trial. The defendant argued at trial that the statement should not be admitted because he was not afforded an opportunity to confront his wife regarding the statement. The trial court allowed the statement to be introduced. On appeal, the Washington Court of Appeals reversed on the grounds that the statement was improperly admitted into evidence. However, the Washington Supreme Court reversed after finding the statement was properly admitted. The United States Supreme Court agreed to hear the case to determine whether introduction of the statement violated the defendant's Sixth Amendment right to confront witnesses against him. The Supreme Court ultimately found that the statement should not have been allowed into evidence. In so doing, *Crawford* stated "[t]estimonial statements of witnesses absent from trial [are admissible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59, 124 S.Ct. at 1369, 158 L.Ed.2d 177.[31]

Assuming that *Crawford* is applicable to the facts of this case, we find that Mr. Reed waived the right to raise the issue in this

---

**29.** There was testimony by J.K. that, during the period when she lived with the family in Ohio, Mr. Reed frequently took baths with J.L.R. However, J.K. testified that she always witnessed the two bathing together and that nothing inappropriate ever took place when Mr. Reed took baths with J.L.R.

**30.** Mr. Reed's reliance upon the *Crawford* decision is actually more appropriate, for review purposes, in the discussion section of his brief regarding the exclusion of Mr. Brown's deposition. Nevertheless, we will address the application of *Crawford* in the context presented by Mr. Reed.

**31.** *See* Syl. pt. 6, *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311 (2006) ("Pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness.").

appeal. *See Young v. State*, 987 So.2d 1074, 1077 (Miss.Ct.App.2008) ("Young ... did not specifically object to Culver's testimony as being a violation of his Sixth Amendment right to confront witnesses. Therefore, we find that Young waived his objection regarding *Crawford*."). *See also People v. Jones*, 374 Ill.App.3d 566, 313 Ill.Dec. 96, 871 N.E.2d 823, 834 (2007) (waiver of *Crawford* violation); *State v. Knox*, 2006 WL 1661628, at 4 (Ohio Ct.App.2006) (same); *State v. Todd*, No. M 2006–00142–CCAR3–CD, 2007 WL 2042477, at 12 (Tenn.Crim.App. July 13, 2007) (same); *Ayala v. State*, 267 S.W.3d 428, 436 (Tex.App.2008) (same).

During the taking of Mr. Brown's deposition, Mr. Reed failed to make any objections to his testimony. Further, prior to trial, Mr. Reed sought to exclude the deposition on the grounds that his attorney had a conflict of interest. After Mr. Brown's video-taped deposition was played to the jury,[32] Mr. Reed failed to make an objection to the testimony on any grounds.[33] When the State rested its case-in-chief, Mr. Reed moved for judgment of acquittal regarding J.L.R.'s charges on the ground that the evidence was simply insufficient. After the trial court denied the motion, Mr. Reed moved the court to allow him to introduce, during his case-in-chief, a recorded statement by J.L.R., in which she allegedly recanted her story of sexual abuse. The trial court denied the motion. The record reveals that, after the motion was denied, the court recessed for lunch. When the court reconvened, Mr. Reed moved the court to "strike" Mr. Brown's testimony on the basis that it contravened the decision in *Crawford*. The trial court denied the motion to strike.

In view of the above facts, we find the *Crawford* issue was waived for direct appeal purposes because Mr. Reed made a tactical decision not to raise the issue until after the State had rested its case, and the trial court had denied his motion to introduce a recorded statement by J.L.R. *See State v. Flanders*, 218 W.Va. 208, 214 n. 7, 624 S.E.2d 555, 561 n. 7 (2005) ("Failure to raise claims in an appropriate and timely manner generally bars review by ... direct appeal." (internal quotations and citation omitted)). *See also Deener v. State*, 214 S.W.3d 522, 527 (Tex. App.2006) ("[T]he right of confrontation is a ... right [that] must be preserved by a timely and specific objection at trial. This was clearly the case before *Crawford*. This remains the case after *Crawford*. There is nothing in *Crawford* that would excuse appellant for failing to make a confrontation claim at trial." (internal quotations and citations omitted)). This tactical decision by Mr. Reed, not to timely raise the *Crawford* issue, prevented the State from exercising any other options it may have had with respect to evidence on J.L.R.'s charges. Having found that Mr. Reed waived his *Crawford* claim by failing to timely raise it, we believe that the evidence adduced through Mr. Brown was sufficient for the jury to find Mr. Reed guilty beyond a reasonable doubt for the charges that involved J.L.R.[34]

**32.** Mr. Brown's video-taped deposition constituted the first of eighteen witnesses called by the State.

**33.** We recognize that Rule 15(f) of the West Virginia Rules of Criminal Procedure requires objections to be raised during the taking of a deposition. However, in this case, Mr. Reed was represented by a different attorney when the deposition was taken. In this situation, trial counsel should have attempted to raise the *Crawford* objection to the deposition immediately before or after it was played to the jury.

**34.** The decision in *Crawford* made clear that the Sixth Amendment right to confrontation "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n. 9, 124 S.Ct. at 1369 n. 9, 158 L.Ed.2d 177. Had the issue of Mr. Brown's testimony been properly objected to during the taking of the deposition or timely raised during the trial, the circuit court would have had an opportunity to decide whether the testimony should be admitted because it was not for the purpose of establishing the truth of the matter asserted. *See* note 22, *supra*, discussing hearsay objection to Mr. Brown's testimony during preliminary hearing. No such opportunity was given to the trial court. The absence of a timely objection to Mr. Brown's testimony means that such testimony could be used as substantive evidence. A majority of courts follow the general rule that "once the trier of fact has weighed the probative value of unobjected-to hearsay evidence in its factfinding process, an appellate court cannot deny that evidence probative value or ignore it in its review of the sufficiency of the evidence." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex.Crim. App.2005). *See also Copeland v. State*, 343 Ark.

██ **2. A.P. and J.P. convictions.** The jury found Mr. Reed guilty of thirty counts of sexual abuse by a custodian and thirty counts of sexual assault in the third degree with respect to A.P.; along with one count of sexual abuse by a custodian and one count of sexual assault in the first degree, with respect to J.P. Mr. Reed contends that the evidence was insufficient to support the verdicts. We disagree.

Both victims, A.P. and J.P., testified during the trial. Their testimony was detailed as to all relevant events involved in the crimes. The only evidence with which the jury was provided that could call into question the testimony of the victims involved A.P. The jury was informed that A.P. initially told the police that she was not sexually abused or assaulted by Mr. Reed. However, A.P. testified to the contrary during the trial. Additionally, the State called two witnesses that had observed Mr. Reed inappropriately touching A.P. and kissing her on the mouth.[35] To the extent that Mr. Reed adduced evidence which placed A.P.'s credibility into question, that was an issue for the jury to resolve. *See Guthrie*, 194 W.Va. at 669 n. 9, 461 S.E.2d at 175 n. 9 ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact. It is for the jury to decide which witnesses to believe or disbelieve. Once the jury has spoken, this Court may not review the credibility of the witnesses.").

Mr. Reed also argues that the evidence was insufficient because there was no physical evidence or eyewitness evidence to the crimes. In other words, Mr. Reed takes the position that only circumstantial evidence was adduced. This Court has noted that

> "[c]ircumstantial evidence ... is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some case[s] point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities.

327, 37 S.W.3d 567, 571 (2001) ("[U]nobjected hearsay testimony may be considered by the trier of fact."); *People v. Panah*, 35 Cal.4th 395, 25 Cal.Rptr.3d 672, 739, 107 P.3d 790 (2005) ("[I]t is settled law that incompetent testimony, such as hearsay or conclusion, if received without objection takes on the attributes of competent proof when considered upon the question of sufficiency of the evidence to support a finding." (internal quotations and citations omitted)); *State v. Outlaw*, 70 Conn.App. 160, 797 A.2d 579, 585 (2002) ("Hearsay evidence admitted without objection, if believed by the [trier or fact], is a sufficient basis for a finding of fact." (internal quotations and citation omitted)); *People v. Marcotte*, 337 Ill.App.3d 798, 272 Ill.Dec. 554, 787 N.E.2d 369, 374 (2003) ("Failure to object to hearsay during the trial allows such evidence to be considered by the trier of fact and to be given its natural probative effect."); *Miles v. State*, 777 N.E.2d 767, 771 (Ind.Ct.App. 2002) ("Failure to object at trial waives any claim of error and allows otherwise inadmissible hearsay evidence to be considered for substantive purposes and to establish a material fact at issue." (internal quotations and citation omitted)); *State v. Allen*, 913 So.2d 788, 807 (La. 2005) ("In the ordinary case, hearsay evidence not objected to constitutes substantive evidence."); *Commonwealth v. Silva*, 431 Mass. 401, 727 N.E.2d 1150, 1154 (2000) ("Hearsay which is not objected to at trial may be weighed [by the jury] with the other evidence, and given any evidentiary value which it may possess." (internal quotations and citations omitted)); *State v. Jackson*, 655 N.W.2d 828, 833 (Minn.Ct. App.2003) ("[H]earsay admitted into evidence without, or over, objection becomes substantive evidence in a trial."); *Fair v. State*, 766 So.2d 787, 791 (Miss.Ct.App.2000) ("[U]nobjected-to hearsay evidence, once received by the court and presented to the jury, becomes competent evidence and may aid in supporting a verdict the same as any other competent evidence." (internal quotations and citation omitted)); *State v. Lucio*, 247 S.W.3d 131, 134 (Mo.Ct.App.2008) ("[I]t is well-established law in Missouri that hearsay admitted without objection may properly be considered as evidence by the trier of fact." (internal quotations and citation omitted)); *State v. Smith*, 24 S.W.3d 274, 280 (Tenn.2000) ("When a party does not object to the admissibility of evidence ... the jury may consider that evidence for its natural probative effects as if it were in law admissible." (internal quotations and citation omitted)). *But see Poe v. State*, 254 Ga.App. 767, 563 S.E.2d 904, 905 (2002) ("Hearsay has no probative value, even if admitted without objection.").

**35.** The two witnesses were employees at a Sears department store. They observed the conduct at the store. One of the employees reported the incident to the police.

If the jury is convinced beyond a reasonable doubt, we can require no more."

*Guthrie,* 194 W.Va. at 668, 461 S.E.2d at 174 (quoting *Holland v. United States,* 348 U.S. 121, 139–40, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954)) (additional citations omitted). We find that the evidence, whether characterized as direct, circumstantial, or both, was sufficient to support the jury's verdict on the charges involving A.P and J.P.

## IV.

### CONCLUSION

In view of the foregoing, the circuit court's order denying Mr. Reed's post-trial motions for a new trial and judgment of acquittal is affirmed.

Affirmed.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.