# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 16-0692**  (Fayette County 16-F-20)

**Todd Booth,**
**Defendant Below, Petitioner**

**FILED**

**November 17, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Todd Booth, by counsel E. Scott Stanton, appeals the June 22, 2016, "Sentencing and Commitment Order" entered in the Circuit Court of Fayette County following his conviction by a jury of conspiracy to commit a felony, malicious assault, and robbery in the first degree. The State of West Virginia, by counsel Zachary Aaron Viglianco, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner and his co-defendants, Robert Patrick and Kristina Lambert, were indicted on January 12, 2016, on charges of conspiracy, malicious assault, first degree robbery, and burglary in connection with the beating and robbery of 74-year-old Bobby Wright ("the victim") on August 8, 2015. Approximately two weeks earlier, the victim met petitioner and Patrick at the vehicle repair shop where they worked in Beckley, West Virginia. The victim hired them to repair his vehicle. After the repairs were completed at the victim's home in Mount Hope, the victim paid the pair, at which time they were able to see that the victim was carrying $500 to $800 in cash.

On the evening of the attack, petitioner, Patrick, and Lambert drove to the victim's home. The victim, who was sitting in his living room, saw someone walk by the window. The victim testified that he got up "[a]nd I'd already knowed [sic] them a little bit, so I went out on the porch and went to talking to them."  He then allowed Lambert to enter the home to use the bathroom. After Lambert returned to the car to get cigarettes, petitioner and Patrick attacked the victim, hitting him hard enough on the head to cause him to lose consciousness. The victim felt one of the men reach into his pocket and steal his wallet. According to Lambert, when the men returned to the car, they threw a wallet into the backseat and showed her their hands, which she described as "red." Lambert testified that the men then stated that the victim would not be

1

waking up for a while.

At trial, Fayette County Deputy Adam Roberts, who answered the victim's 9-1-1 call on the evening of the attack, testified that, although the victim did not know the names of his attackers, "[h]e stated that he had met them at Greg Lilly Auto Sales in Beckley[,]" and that he had previously hired them to perform work on his vehicle. Detective William Kevin Willis testified that receipts and video surveillance of several stores in the area revealed that Lambert used the victim's credit card on the evening of the attack and that petitioner was seen in several of the videos alongside Lambert.

As a result of the attack, the victim suffered a fractured orbital bone, another skull fracture, and intracranial bleeding that resulted in a subdural hematoma. The attack also had a severe, degenerative impact on the victim's health, causing his memory and cognitive function to worsen and resulting in treatment for post-traumatic stress disorder ("PTSD"), depression, and anxiety.

On February 25, 2016, the State filed a motion under Rule 15 of the West Virginia Rules of Criminal Procedure to take the evidentiary video deposition of the victim on the ground that his "health is continuing to deteriorate and his ability to physically participate in the trial of this matter [set for April 7, 2016,] seems less and less likely." Following a hearing, and over petitioner's objection, the circuit court granted the State's motion.

On March 10, 2016, just prior to the scheduled video deposition of the victim, petitioner filed with the circuit court a waiver of his right to be present at the victim's video deposition. However, the State objected on the ground that the victim, who had not previously identified petitioner as one of his attackers, would be given the opportunity to identify the petitioner for the first time during the deposition. The State advised the court that it needed the victim to make the identification in order to prove its case. Based upon the State's objection, the circuit court refused to accept petitioner's waiver.

A video deposition of the victim was thereafter conducted in the courtroom and with the circuit judge presiding. During the course of the deposition, the victim recounted the attack and identified petitioner and Patrick, both of whom were present,[1] as his attackers. Counsel for petitioner and his co-defendants cross-examined the victim.

Immediately following the victim's Rule 15 deposition, the circuit court conducted a hearing on the motions to sever previously filed by petitioner and Patrick. The court denied the motions. Prior to petitioner's trial, petitioner's co-defendants entered into plea agreements with the State.

On March 18, 2016, petitioner filed a motion to suppress the victim's identification of him at trial. Following a hearing, the circuit court denied the motion.

On April 7, 2016, the State filed a motion in limine to allow the victim's video deposition

---

[1] Co-defendant Lambert could not be located and was not present; however, her counsel was in attendance.

to be played at trial on the ground that, since the time the deposition was taken, the victim's "mental and cognitive condition has deteriorated to the point that it is the opinion of his treating health care providers that he not testify in person at the trial in this matter. . . . and that forcing [him] to testify will cause further damage to his health and well-being." Following a hearing, the circuit court granted the motion.

A two-day jury trial was conducted beginning on April 18, 2017. Petitioner was convicted of conspiracy, for which he was sentenced to one to five years of incarceration; malicious assault, for which he was sentenced to two to ten years; and first degree robbery, for which he was sentenced to fifty years.[2] The sentences were ordered to be served consecutively to each other and to the sentence he was then currently serving for a prior conviction for daytime burglary in Monroe County, West Virginia.[3] This appeal followed.

Petitioner's first assignment of error involves the taking and use of the victim's video deposition. Petitioner argues (1) that there was insufficient evidence that the victim was in such ill health that a video deposition under Rule 15 of the Rules of Criminal Procedure was warranted or that he could not thereafter appear at trial to testify; (2) that petitioner should have been permitted to waive his presence at the deposition; and (3) that the victim's identification of petitioner at the deposition should have been suppressed. We will address each of these arguments in turn.

Under Rule 15(a),

> [w]henever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition. . . .

*Id.* in relevant part. *See* Syl. Pt. 1, *State ex rel. Spaulding v. Watt*, 186 W. Va. 125, 411 S.E.2d 450 (1991) (holding that "Rule 15 of the West Virginia Rules of Criminal Procedure permits a deposition to be compelled in a criminal case only under very limited conditions, i.e., where, due to exceptional circumstances, the deposition is necessary, in the interest of justice, to preserve the deponent's testimony for use at trial."). Petitioner argues that the State failed to show that "exceptional circumstances" existed in this case to warrant the taking of the victim's video deposition under Rule 15.

The decision whether to permit a deposition under Rule 15 rests with the sound discretion of the trial judge. *See State v. Ferrell*, 174 W. Va. 697, 699, 329 S.E.2d 62, 65 (1985). We find no error. Given the victim's advanced age and the fact that, based upon submitted medical records, his physical and mental health were deteriorating following the serious injuries sustained from the attack, the circuit court determined that, in the interest of justice, the victim's testimony should be preserved in a video deposition. We cannot say that the court abused its

---

[2] The burglary charge was previously dismissed.

[3] At the time petitioner was arrested on the charges in the present case, he was on parole on the Monroe County charge. *See* discussion *infra*.

discretion in so finding and in thus permitting the taking of the victim's deposition.

With regard to the court's subsequent ruling that permitted the State to use the victim's deposition at trial in lieu of his live testimony, we likewise find no error. Attached to its motion in limine to allow the use of the victim's deposition at trial, the State submitted a letter from the victim's health care provider that opined that the victim should not be required to testify at trial. In the provider's opinion, "the stress that [testifying] would produce would exacerbate [the victim's] anxiety and PTSD symptoms again to the point that he would not be able to function without the support of another person." He further opined that "the combination of the blunt force head trauma along with the stress of having to deal with the legal proceedings over that [sic] past nine months combined to worsen his cognitive function."

Under Rule 15(e) of the West Virginia Rules of Criminal, "[a]t the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence if the witness is unavailable, as unavailability is defined in Rule 804(a) of the West Virginia Rules of Evidence. . . ." *Id.* in relevant part. Rule 804(a)(4) provides that "[a] declarant is considered to be unavailable as a witness if the declarant . . . cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness[.]"

This Court has recognized that a circuit court's "'decision to actually admit [a] deposition as evidence is reviewed for an abuse of discretion.' *United States v. Martinez,* 198 Fed.Appx. 704, 711 (10th Cir.2006)." *State v. Reed*, 223 W. Va. 312, 316, 674 S.E.2d 18, 22 (2009). *See Id.* ("'The determination of admissibility of deposition testimony based on the unavailability of the witness is a matter left to the discretion of the trial judge.' *United States v. Campbell,* 845 F.2d 1374, 1378 (6th Cir.1988)."). The circuit court concluded that, based upon the medical records submitted with the State's motion in limine, and also upon the State's representation that the victim, as of the April 14, 2016, hearing date, was no longer ambulatory, the victim was unavailable to testify. Having previously observed the victim while he was being deposed, the court specifically noted that "[h]e appeared to be frail[,]" that the records show that "he was almost beaten to death[,]" and that "he has continued to deteriorate[.]" The court determined the victim to be "unavailable for the trial in this matter because of his declining physical and mental health, and a lot of that is – appears to be as a result of the beating that was inflicted on him on this particular day." Importantly, the court recognized that the victim was cross-examined during his deposition and that "all counsel really did a good job pointing out areas that were favorable to their clients in the testimony."

The Court finds that the circuit court carefully considered the circumstances presented, including that the victim was no longer ambulatory, that his cognitive function had worsened in recent months, and the opinion of his health care provider that testifying at trial would only exacerbate his already declining health. The circuit court also emphasized that petitioner's counsel, along with counsel for his co-defendants, ably cross-examined the victim during the course of the deposition. Given the foregoing, we cannot say that the circuit court abused its discretion in admitting the victim's deposition at trial.

Next, we address petitioner's argument that the circuit court erred in refusing to allow him to waive his presence at the victim's deposition. Under Rule 15(b),

4

[t]he party at whose instance a deposition is to be taken shall give to every party reasonable written notice of the time and place for taking the deposition. The notice shall state the name and address of each person to be examined. . . . The officer having custody of a defendant shall be notified of the time and place set for the examination and shall, *unless the defendant waives in writing the right to be present*, produce the defendant at the examination and keep him or her in the presence of the witness during the examination. . . .

*Id.*, in part. (Emphasis added). Petitioner argues that, under Rule 15(b), he had the right to waive his attendance at the victim's deposition.

We find no error. The circuit court was presented with the unique fact that the State represented to the court that its case rested, at least in part, on the testimony of an elderly victim who was in declining health primarily due to the physical assault giving rise to the charges at issue. The purpose of the deposition was to preserve the victim's testimony and to obtain a positive identification of petitioner and Patrick as his attackers in the unfortunate event the victim would be unable to testify at trial. Petitioner's absence would have clearly frustrated that purpose. Therefore, under such unique facts, the circuit court did not abuse its discretion in refusing to accept petitioner's waiver of his right to be present.

Petitioner next argues that the circuit court erred in refusing to suppress the victim's identification of petitioner during the deposition. Petitioner argues that, until the deposition, the victim could not recall the names of either petitioner or Patrick nor could the victim identify either of the men out of a photographic line-up. Petitioner contends that the circumstances surrounding the positive identification at the deposition were overly suggestive because petitioner stood out while wearing orange prison attire and shackles[4] and, as such, the identification was unreliable and, therefore, inadmissible. In so arguing, petitioner relies on the test of *Neil v. Biggers*, 409 U.S. 188 (1972), adopted by this Court in syllabus point three of *State v. Casdorph*, 159 W. Va. 909, 230 S.E.2d 476 (1976), *abrogated on other grounds by State v. Persinger,* 169 W. Va. 121, 286 S.E.2d 261 (1982), which held, in relevant part, that "whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification" requires that a court "look to the totality of the circumstances and determine whether the identification was reliable," even where "the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

We find petitioner's reliance on *Casdorph* to be misplaced as the victim's identification of petitioner was not the type of out-of-court identification contemplated under *Biggers/Casdorph*. In this case, the victim identified petitioner and Patrick as his attackers during his Rule 15 deposition, which was subsequently admitted into evidence in lieu of the victim's live trial testimony. After identifying them, counsel for petitioner and his co-defendants vigorously cross-examined the victim regarding the fact that he did not previously know their

---

[4] The video of the victim's deposition was edited such that the jury never saw petitioner or his co-defendant, Patrick, the latter of whom was wearing street clothes.

names, that he gave confusing descriptions of the two men to police, and that he could not pick them out of a photographic array shortly after the attack. The victim's testimony was heard by the jury, as was the evidence that, when the two men arrived at his home on the evening of the attack, the victim recognized them as the same men whom he met two weeks earlier at Greg Lilly Auto Sales and hired to fix his vehicle, and who spent time at his home fixing the vehicle. The jury also heard testimony from Deputy Roberts who answered the victim's 9-1-1 call and who was told by the victim that he met his attackers at the auto shop and that they had repaired his vehicle. Further, Kristina Lambert, petitioner's co-defendant, placed petitioner at the scene and video surveillance at area stores after the attack showed petitioner at Lambert's side as she purchased items using the victim's credit card.

It is clear that "'[i]n the trial of a criminal prosecution, where guilt or innocence depends on conflicting evidence, the weight and credibility of the testimony of any witness is for jury determination.' Syllabus Point 1, *State v. Harlow,* 137 W.Va. 251, 71 S.E.2d 330 (1952)." Syl. Pt. 2, *State v. Smith*, 225 W. Va. 706, 696 S.E.2d 8 (2010). *See* Syl. Pt. 2, *State v. Bailey,* 151 W. Va. 796, 155 S.E.2d 850 (1967) ("The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses."). Given that it was the jury's role to determine the credibility and reliability of the victim's testimony—including his identification of petitioner as one of his attackers—we find that the circuit court did not err in denying petitioner's motion to suppress the identification at trial.

In his next assignment of error, petitioner argues that the circuit court erred in failing to grant his motion to sever[5] prior to the taking of the victim's deposition. Petitioner states, without further explanation, that the court erred in (1) allowing the victim's deposition to proceed without first addressing the motions to sever filed by petitioner and his co-defendants, and (2) allowing the victim to be deposed "with three lawyers participating and cross-examining [him]."

This Court has held that it "will not reverse a denial of a motion to sever properly joined defendants unless the petitioner demonstrates an abuse of discretion resulting in clear prejudice." Syl. Pt. 3, in relevant part, *State v. Boyd*, 238 W. Va. 420, 796 S.E.2d 207 (2017). Indeed, "a defendant bears a heavy burden in gaining severance, and must pinpoint clear and substantial prejudice resulting in an unfair trial." *Id.* at 431, 796 S.E.2d at 218 (quoting *United States v. Tutis*, 167 F.Supp.3d 683, 692 (D.N.J. 2016)). Here, petitioner's argument is substantively sparse and fails to indicate how he was prejudiced by the court's actions. In fact, given that both of petitioner's co-defendants entered into plea agreements prior to trial and that petitioner was tried alone, "petitioner clearly did not suffer any prejudice as a result of a joint trial, [thus,] this issue is moot." *State v. Jordan*, No. 16-0072, 2016 WL 6819053, at *2 (W. Va. Nov. 18, 2016) (memorandum decision).

In his final assignment of error, petitioner argues that the circuit court erred in failing to give him credit for "all time served" between his arrest and sentencing. Petitioner was arrested in

---

[5] *See* Rule 14(b) of the West Virginia Rules of Criminal Procedure, which states, in part, that "[i]f the joinder of defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the State, the Court may sever the defendant's trials, or provide whatever other relief that justice requires."

the State of Virginia on August 19, 2015. At the time of his arrest, he was on parole for a prior criminal conviction in Monroe County. He was returned to West Virginia and incarcerated. On October 2, 2015, petitioner's parole was revoked upon his admission that he violated it by traveling to Virginia. Upon sentencing in the instant matter, the circuit court ordered that petitioner's sentences for his convictions in this case be served consecutively to each other and to the sentence he is currently serving from Monroe County. The court also directed that petitioner "be credited with time served (August 19, 2015 through October 2, 2015) with the West Virginia Regional Jail Authority while awaiting disposition of this matter." On appeal, petitioner argues that the circuit court should have awarded him credit for the time served from the date of his arrest until his sentencing on the charges for which he was convicted herein.

It is well established that petitioner is entitled to credit for the time he spent incarcerated while awaiting trial. *See* Syl. Pt. 6, *State v. McClain,* 211 W. Va. 61, 561 S.E.2d 783 (2002) (holding that "[t]he Double Jeopardy and Equal Protection Clauses of the West Virginia Constitution require that credit for time spent in jail before conviction shall be credited against all terms of incarceration to a correctional facility imposed in a criminal case as a punishment upon conviction when the underlying offense is bailable."). However, we have also held that "a criminal defendant is not entitled to have credit for time served applied to all overlapping, unrelated charges, if credit was properly applied to at least one of those charges." *State v. Greene*, No. 15-0402, 2016 WL 3463468, at *4 (W. Va. June 21, 2016) (memorandum decision). *See State v. Wears,* 222 W. Va. 439, 665 S.E.2d 273 (2008) (denying credit for time served between State's voluntary dismissal of an indictment and defendant's reindictment because he remained in custody serving time on unrelated charges).

In this case, petitioner was arrested on August 19, 2015, and incarcerated. On October 2, 2015, he admitted violating his parole on a prior unrelated conviction and his parole was revoked. Petitioner remained incarcerated both for his parole revocation on the unrelated conviction and on the charges now at issue. Upon his conviction on the charges herein, the circuit court granted petitioner credit for time served for the period of August 19, 2015 (the date of his arrest), through October 2, 2015 (the date his parole on the unrelated conviction was revoked). Our law is clear that, under these facts, petitioner is not entitled to additional credit for time served up through the date of sentencing on the current charges. *See Wears*, 222 W. Va. at 445, 665 S.E.2d at 279; *Echard v. Holland*, 177 W. Va. 138, 351 S.E.2d 51 (1986) (holding that presentence credit time served on one sentence is not available where criminal defendant is already incarcerated on another conviction). "To give [petitioner] credit for time again under [the current charges], as he now asks this Court to do, would constitute the functional equivalent of permitting him to serve the consecutive sentences in a concurrent manner which is contrary to . . . the . . . sentencing order." *State ex rel. McCabe v. Seifert*, 220 W. Va. 79, 83 n.7, 640 S.E.2d 142, 146 n.7 (2006). Thus, we find that petitioner was properly given credit for all time served on the charges for which he was convicted herein.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 17, 2017

**CONCURRED IN BY:**

Chief Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker